Case 4:21-cv-02408   Document 12   Filed on 06/01/22 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
June 01, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ALANNA ADCOCK § § | |
| Plaintiff. § § | |
| VS. § | CIVIL ACTION NO. 4:21-cv-02408 |
| § | |
| KILOLO KIJAKAZI, ACTING § COMMISSIONER OF THE SOCIAL § SECURITY ADMINISTRATION, § § | |
| Defendant. § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Alanna Adcock ("Adcock") seeks judicial review of an administrative decision denying her applications for disabled widow's benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Adcock and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 9 and 10. After reviewing the briefing, the record, and the applicable law, Adcock's motion for summary judgment should be **GRANTED**, and the Commissioner's motion for summary judgment should be **DENIED**.

## BACKGROUND

Adcock filed an application for disabled widow's benefits in December 2018, alleging disability beginning on January 1, 2007. Her application was denied and denied again upon reconsideration. Adcock then requested a hearing before an Administrative Law Judge ("ALJ"). Around the time Adcock requested the hearing, she filed an application for supplemental security income. The application for supplemental security income was expedited and heard concurrently with the application for disabled widow's benefits. The ALJ held a telephonic hearing on November 12, 2020 (due to the COVID-19 pandemic) and found that Adcock was

not disabled. Adcock filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Adcock "has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date." Dkt. 5-3 at 14.

The ALJ found at Step 2 that Adcock suffered from "the following severe impairments: chronic obstructive pulmonary disease (COPD), degenerative disc disease of the cervical and lumbar spine, spinal scoliosis, right shoulder arthropathy, right arm/hand neuropathy, bilateral carpal tunnel syndrome, depression, and anxiety." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Adcock's RFC as follows:

> [T]he the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds. The claimant can frequently stoop, crouch, kneel, and crawl. The claimant can frequently reach, handle and finger with the right upper extremity. The claimant may need to alternate standing and walking with sitting for 10 minutes in the morning and afternoon for comfort while remaining on task, in addition to the normal breaks. The claimant

may need to wear a back brace while at work. The claimant may need to use a rescue inhaler as needed and administer albuterol treatments during normal breaks. The claimant must avoid concentrated exposure to industrial dusts, gases, fumes, and inhalant irritants of the type typically found in plants, warehouses, garages, and machine shops. The claimant is limited to frequent interaction with the public. The claimant can remain on task at a sustained rate of concentration, persistence and pace for at least 90% of the workday, i.e., will be off-task up to 10% of the workday. The claimant is limited to low-stress work settings and tasks, i.e., no forced production paced or assembly line type jobs.

*Id.* at 16–17.

At Step 4, the ALJ found that Adcock "is unable to perform any past relevant work." *Id.* at 24. And, at Step 5, the ALJ concluded that Adcock is not disabled, explaining that she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 25.

## DISCUSSION

This social security appeal raises three issues: (1) whether the ALJ failed to properly identify all of Adcock's health conditions at Step 2; (2) whether the ALJ improperly considered Adcock's non-compliance with treatment in formulating her RFC; and (3) whether the ALJ's decision is supported by substantial evidence. I begin and end with the first issue.

At Step 2, the ALJ recognized several of Adcock's health conditions as severe impairments. Specifically, as described above, the ALJ recognized these severe impairments: chronic obstructive pulmonary disease, degenerative disc disease of the cervical and lumbar spine, spinal scoliosis, right shoulder arthropathy, right arm/hand neuropathy, bilateral carpal tunnel syndrome, depression, and anxiety. *See id.* at 14. The ALJ also recognized that Adcock suffered from osteoporosis but found that it was not a severe impairment. *See id.*

In this appeal, Adcock does not challenge the ALJ's Step 2 determination with respect to the impairments he recognized. Instead, Adcock claims that the

ALJ failed to discuss—or even acknowledge—that she suffered from significant migraines and weight loss with fatigue. Based on the ALJ's failure to acknowledge her migraines and weight loss, Adcock essentially argues that the ALJ's entire determination could have been different if the ALJ had considered the limitations she faced due to those impairments.

Adcock is correct that the ALJ does not recognize or discuss migraines at all in his decision. This is probably because Adcock did not identify migraines as one of her impairments in her application and related documentation, nor did she discuss them during her hearing before the ALJ. *See* Dkt. 9 at 7. Although Adcock did not discuss her migraines, the medical records clearly document that she dealt with migraines for some time. Indeed, Exhibit No. 5BF, which the ALJ cites extensively in his decision, lists "Common Migraine" among other diagnoses such as sciatica, COPD, right shoulder pain, depression, and chronic pain syndrome. Dkt. 5-12 at 74. In addition to the diagnosis, the medical records also suggest that Adcock's migraines are related to her degenerative disc disease of the cervical and lumbar spine and right shoulder arthropathy. *See* Dkt. 5-13 at 25. In my view, given that the ALJ cited the exhibit containing the migraine diagnosis, the ALJ should have discussed the impairment even if Adcock failed to mention it. *See Goin v. Astrue*, No. 3:12-CV-02471-B-BK, 2013 WL 1130050, at *4 (N.D. Tex. Feb. 19, 2013) ("A claimant's failure to mention specific impairments at the hearing is not dispositive of the ALJ's obligation to consider all of the medical evidence in the record as well as any impairments that have significant supporting evidence.").

Nonetheless, even if Adcock is correct that the ALJ failed to consider her migraines, "such a conclusion does not require an automatic reversal—if the ALJ proceeds past step two, the Court considers whether the error was harmless. The error is harmless if the ALJ considered [Adcock's] conditions in h[is] RFC analysis." *Steven K. v. Kijakazi*, No. 3:20-CV-01655-G-BT, 2022 WL 1056920, at *7 (N.D. Tex. Jan. 19, 2022).

Here, it is unclear to me whether the ALJ considered Adcock's migraines in formulating the RFC. To be sure, the ALJ does not expressly state that he considered the migraines. Moreover, it is unclear to me what limitations, if any, the migraines purportedly impose on Adcock. For example, at least one medical record reflects that Adcock self-reported that the migraines were unrelenting, *see* Dkt. 5-12 at 58, but in a later medical record, Adcock denied dizziness and headaches. *See id.* at 12. Obviously, this type of evidence, especially to the extent it relies in part on self-reports, will require some form of weighing to reach a determination. My role does not include resolving such conflicts in the evidence. *See Armstrong v. Saul*, No. 3:19-CV-00137, 2020 WL 410197, at *2 (S.D. Tex. Jan. 21, 2020) ("conflicts in the evidence are for the Commissioner, not the courts, to resolve" (quotation omitted)).

While this matter may be short work for the ALJ on rehearing, out of an abundance of caution, I find that the most prudent course is to remand this matter for reconsideration.[1]

## CONCLUSION

For the reasons provided above, Adcock's motion for summary judgment (Dkt. 9) should be **GRANTED**, and the Commissioner's motion for summary judgment (Dkt. 10) should be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

---

[1] I urge the ALJ to review Adcock's brief to ensure that any other claimed omissions are addressed upon rehearing.

SIGNED this 1st day of June 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE